Good morning. Let me please the court. There are two parts to this case, and really two sets of defendants, and I'm going to address them separately because really the legal and factual underpinnings are fairly different. The first one, obviously, is Lieutenant Jacobs. And there are two principal questions, as I see it, with respect to Lieutenant Jacobs. One was the false arrest claim against him, dismissed appropriately by Judge Garifas, and the second one would be whether or not, had the claim gone forward based on the evidence generated during discovery, at the summary judgment stage, would it have been dismissed anyway? Because obviously, if the case can't go forward and ultimately pass summary judgment, it doesn't matter whether or not he survives a motion to dismiss. I think the answer to the first question as to whether or not the complaint fairly stated a claim against him is really found in paragraph 40. And it is an inference, but I think it's a pretty strong inference. My client is in the back of a car. They find Lieutenant Jacobs when they're investigating the crimes that my client had reported to the police. Lieutenant Jacobs speaks to them, says, I'm on the job. I'm sorry. I'm sorry. Just before you go into this, is this paragraph 40 of the actual Second Amendment complaint or the proposed Second Amendment complaint that the judge was reviewing? So I'm looking at the right place. I'm sorry. I believe, now that you say it, now I'm doubting myself. I might be able to tell you. I believe it's the actual. Yes, it is. Okay, sorry. So the actual Second Amendment complaint, I see now. What page is that? I've got it from the district court. But in any event, the question of whether an amendment to say some more about Jacobs would have been futile is one of the arguments that you're making. Well, so they both connect to whether there was something against Jacobs. So go on. Correct, Your Honor. At the time, before discovery, all my client had was, you know, well, my client did not have all of the facts that we have now that could be presented at summary judgment. But our point here is that based on this paragraph 40, there's a pretty good inference that at one point you're being treated as the victim. They go talk to somebody. They come back. You're not free to leave. That person they spoke to had some role in the arrest process, and that's really all you need to open the door to the false arrest. Yeah, but in terms of a federal thing, he has to have some state action, some thing. So the question is, is his statement that I am a lieutenant enough so that we can say that that is enough for a 1983 action against him? The standard isn't whether there's one talismanic thing that gets you there. It's a totality of the circumstances. I think the strongest fact is, is that they paid him for his time. I mean, he literally was working as a police officer. He said, I'm on the job. That's not in the complaint, right? That's correct. That's not in the complaint. So we're starting at the 12. Well, it's not 12 v. 6. It's kind of 12 v. 6. It's denial of leave to amend on futility grounds, which we treat like a 12 v. 6, right? Right. And the lower court didn't consider whether or not there was state action. And obviously some of the evidence that came out about him acting under color of law rather came out during discovery. But he does say, I'm on the job. And when he says I'm on the job, he's saying I am at work as a police officer. And I think at least for the purposes of determining whether or not it was plausible, at least to go into discovery and find out if that, in fact, was true, I think that that's enough to pass the test. Pass the test either under the complaint or to allow an amendment to make this clear in another complaint. Well, at this point, we're on our third complaint. And I do believe that that was sufficient to enter into discovery. But you don't need that in terms of this, because if the court was incorrect in saying that an amendment was futile, because that you still, so I don't quite understand why you're fussing. OK, understood, Your Honor. And I agree. I am fussing, however, because I think the same issue comes up again at summary judgment. And my understanding would be that if you can't survive summary judgment, it really doesn't matter whether or not you got to go forward in the complaint either way. And that's why I'm focusing on the totality of the circumstances. The fact that he felt there's a fitness for duty report, meaning are you fit for duty right now? That's 472, where also it identifies that he's not. So what is it that you claim? Because I think you're getting to it, at least from my perspective. What is it that you claim was sufficient or is necessary to show that he participated in the false arrest? So you've already said that the fact that he was paid overtime. Well, that's under color of law as to whether or not he participated in the false arrest. The truth shown by the video, and I think through my client's testimony, was that two much larger men cornered my client and threatened him. My client defended himself in a very minor way by flicking the person's glasses off under the fairly logical assumption that if they can't see him, they can't shoot him. And then he turns off and runs at a remarkable rate of speed, if you've seen the video, at which point Jacobs trips, falls, hits his head on the ground, and then ultimately uses that to say that. Let me just see if I understand what you're saying. You're saying that Jacobs acted sufficiently under color of law, either before or that an amendment may make that clear enough so that we can possibly get by summary judgment, but certainly get by 12B6, and that the evidence that he participated in the arrest is sufficient so that that stands. That's your argument. Okay. That's my argument. And, you know, I am getting a little short on time. I would like to address the city defendants because I believe that's a bit more complicated. And I think with respect to the false arrest, whether you categorize it as individual participation by each of the defendant officers, or whether you categorize it as a conspiracy, either. But what evidence is there that the people who arrested him, other than Jacobs, didn't have probable cause? And what evidence is there that there was any conspiracy? I don't see anything of that or anything that suggests that an amendment would do that. Let me address the V. McLaughlin. And what that stands for their proposition is that you do have to promptly process someone, and that improper delay, regardless of probable cause. With Riverside, probable cause is assumed. Why wasn't six hours a reasonable amount, given what Jacobs had said, which they at the time had no particular reason to doubt? Then they start to doubt because of video and so on. And so we try to find out. It's actually exactly the opposite, Your Honor. Initially, what they tell IAB and what they're saying is that Jacobs admitted to being one of the assailants. He was trying to, you know, either false arrest or some sort of mutual combat. And then they held on to my client for hours while they cleaned up Jacobs' statement. And if you look at what pops out on the other end, it goes from O'Connor and Jacobs threatening to shoot my client, threatening to rob him, to Jacobs having no role, only being the complaining witness. And that, the reason they held on to my client for all of those hours was to go through that process. That under Riverside, regardless of probable cause, I submit is improper delay. You can't hold somebody in custody for the purposes of cleaning up a police officer's misconduct. And when you look at the before and after picture, if you compare what the DA got, which is in the arrest report. Let me see if you're saying that he was harmed, your client, my client kept in jail for six hours while they were trying to do something that helped Jacobs. No, the opposite. They were looking to clean Jacobs out of the record. Jacobs was the one that was armed. My client was not armed. He was outmatched by these two men. He was a victim. Yeah. I understand. I think you're confusing me, but is there any argument that the city is liable under Respondent Superior for Jacobs' acts? Assuming we agree with you on the first part of the argument, is there any argument that the city might be liable under Respondent Superior for Jacobs' acts? It depends on which part. As far as the assault, we say no. I don't think that there's any evidence that the city would be liable. With respect to the false arrest, as I said, when he says he's on the job, there's testimony that when you start responding to an incident, you stop being off-duty and you start being on-duty. It's like an emergency exception. That point, I do believe that for the false arrest statement, that the city would be liable. And there's a five-factor test cited from the Court of Appeals. So some argument that this was in the scope of his duty as far as the city was concerned. And at a minimum, let's notice that Jacobs somewhere, in order to make the inter-corporate argument against conspiracy, does say that he was in the scope. So that there is an argument that he might be collaterally stopped from denying that he was in the scope because somewhere in this thing, he says he is in the scope. It's interesting that the city briefs Jacobs' color of law argument because it undermines their inter-corporate conspiracy argument. And also, Jacobs isn't their client. And I did find that part of the brief perplexing. But one thing I would like to note, because I don't think it's present in my brief, is that I believe at least the respondeat superior dismissal should be vacated. Because if ultimately I don't win the federal claims, I'm going back to state court. And I do not think it would be fair if ultimately due to the declination of supplemental jurisdiction that my client never got an appeal on that state law issue. And that only applies, of course, if I lose by federal claims, which of course, I'd say I don't. Thank you. There's lots more I could say, but I am well over my time. Yes. Thank you very much. You did reserve some time for rebuttal. So we'll hear from the city and then from counsel for Mr. Jacobs. Thank you, Your Honor. Good morning. May it please the court. Alina Drucker on behalf of the city. Can you speak up just a little bit? Thanks. Alina Drucker on behalf of the city. Good morning. I think the most straightforward answer to this entire case is that probable cause defeats all of the claims against the city, both against Jacobs and his official capacity and against all of the other officers. Well, hypothetically, let me ask you about that because I'm glad you started with that. I am not saying that this is what happened in this case, but hypothetically, if a bunch of officers got together and manufactured probable cause and gave it to an arresting officer, the law is clear that an arresting officer is entitled to rely on the statements of his colleagues that would support probable cause. So the arresting officer would not be liable for false arrest. And in fact, he would have had probable cause to arrest the target, the suspect. But if the other officers did knowingly manufacture the evidence that underlay the probable cause, couldn't they still be liable for that conspiracy, even though the substantive false arrest claim does not proceed against the arresting officer? I believe that would most likely be cognizable as a fabrication of evidence claim against those others. So if you have a claim against those lay people having nothing to do with the police department and they lied to the police and gave a false report, it's the same exact situation. And then the question about the city's liability for their conduct really goes to yes. I mean, I think it would be a fabrication claim and probably would fall under a Fourth Amendment claim aligned with some sort of false arrest. But I don't think that happened here. I think you started with that, which would have to be a separate fabrication claim. You're saying that they couldn't conspire other officers other than the arresting officer, right? Who believed there was probable cause allegedly based on the knocking his glasses off and the other physical contact. These other officers cannot, you say in your brief, they can't be held liable for the conspiracy to false arrest because the substantive, the arrest itself was supported by probable cause. Well, it's more actually, I think that here under these facts, the entire arrest is supported by probable cause, even taking into account everything that Jacobs knew as a fact, which is, you know, the first point is that there's a crime under New York law under Section 145, which is criminal mischief. So even going up to, you know, if you're in the middle of an altercation, the police, regardless of, you know, oh, this person really, the plaintiffs are effectively trying to say a justification defense, which is a great argument to make to a criminal jury. But for police who arrive on the scene of an altercation, including Jacobs, whether he's in his private capacity or his official capacity, I say he's in his private capacity and I don't concede that. But just even if you assume against me on every single legal argument, we still have probable cause. The flicking the glasses and breaking them. I mean, if you watch the video, I think it sort of belies any argument that they're flicked. I mean, are you basically saying that the arresting officers and therefore the city had no reason at the time they made the arrest to know that Jacobs was lying? There's a claim that Jacobs was lying. And you're saying basically they were told this and they had every right to act on it. And that's probable cause. So that is one of our arguments, but not the main one, which is to say, if you take Officer Jacobs and you make him part of the police department rather than making him a private citizen, and I don't think you should do that, and I've explained in my brief why that's wrong. But even if you ruled against me on that, even if you take everything that Officer Jacobs knew subjectively and include that in the quantum of evidence that the police department has when making the arrest, I could table that for one second too, you would still have probable cause. Because during the altercation, the plaintiff doesn't dispute. He reached over and there's video evidence confirming it, touched another human being's face, causing his black glasses to break in three pieces when they fell to the ground. And that's enough to justify an arrest? That is criminal mischief. If he did that in answer to being attacked? If he did that in answer to being attacked and the evidence was overwhelmingly clear, there is a, this court in jocks explains how it works with self-defense and justification as a defense. So for the police to vitiate probable cause, you need to have effectively no doubt. Police can't just make that judgment call on the spot. I can hear that in terms of the arresting officers in the city, but I have trouble with that with Jacobs who knows, or at least it could be shown that he knows what was going on and that this guy was barely having been hit reacting. You're not going to disagree with the city part. I agree. I think the point is that for the police, for even if you assume Lieutenant Jacobs is an officer at the time, and I don't, in his capacity, even in that situation, you have an altercation. You have two, you have a man screaming, another man screaming, one guy punches another guy, one guy shoves another guy. That is probable cause to arrest all of them, all three of them. It's probable cause. And you have probable cause after that, because these are shoving. And then when he gets to the, one of the things too, is the question about when the arrest takes clear. Yes. Why you're spending so much time trying to defend the probable cause. I'm a part of Jacobs. Your job is to try to defend the city unless you're saying that the city might be liable under respondent superior for Jacobs. I think to be clear, the city, the claims against the city and for which the city is either answerable or would be required to provide indemnification are the 1983 claims. For the state law respondent superior claim, I think the law is quite clear. The court could choose not to exercise pendant jurisdiction, but actually under respondent superior, whether or not someone is acting within the scope of employment is actually, it is, if, if you win on the federal claim, you easily went on the state claim. It's a lower standard. So for, for being answerable for his conduct, but the question I think for you, for my purposes, believe me, the question of when something is in the scope of employment in New York is anything but clear. It's one of the hardest things. I'm sorry. Clear shouldn't be the case law that is extremely analogous to the case law here of police officers in this kind of situation on the state law claims. I are not the ones that are concerning in the sense, in the same way here, the question about color of law though, and the reason that I'm addressing that it's part of the city's case is that the 1983 claim is being the way that this case is a little bit strange, right? Because the amended complaints weren't accepted. And so to the extent we're talking about just at summary judgment, the only claims are against the city defendants and the city defendants clearly had probable cause. If you, if they, if they come to the scene, they see three men who are injured, broken glasses, a laceration on the face and the injury beyond anything else they hear, they talk to those people. Then actually one of the people, I mean, a separate question about when the arrest happened, because he, he, Mr. Cooper said that he wanted to go to the police station. He said, I wanted to tell them exactly what happened. He, he said he felt coerced, but he also chose to go to the station. And as soon as he arrived at the station, he revealed that he had marijuana on him, which was yet another basis of probable cause of an independent basis to continue holding him, having nothing to do with anything that also absolves the city of any false arrest claim at that point. So, but the hang up about officer Jacobs and whether the officers on the scene somehow, as soon as officer Jacobs came in, they had to believe him or why did the conspiracy theory that's, that's sort of being spun out relies on assuming that the amended complaint is wrong and that somehow there is a claim that's a fictional claim that I'm sort of talking about, one that doesn't actually exist, which is why I think I'm being so confusing. I'm sorry. Does the city, does the city have a view on the appropriateness of Lieutenant Jacobs's conduct? He was disciplined. He was, I think as on the scheme of things, fairly severely disciplined as, as part of the police department for what is clear in the disciplinary proceedings, which were affirmed in administrative process, but for off duty conduct, it was off, it was inappropriate off duty conduct to get into it. Could you, could you, and I, I don't mean to this because your time is, well, we're going to ask the question. Tell me how, under what circumstances are off duty officers disciplined by the NYPD? As an off, as an off duty police officer, the police officer still has to abide by the rules of the patrol guide. And so, and what's the, what's the theory of that? That's part of the conditions of their employment. No, no. But why, why is that made part of the conditions of their employment? Even if you are not acting in your judicial capacity, it is an embarrassment to your office. If you go off and do something in your off duty capacity, that is. Because it reflects poorly on the NYPD. Of course. But that doesn't mean that every single thing, every single police officer off duty does is something that the city is automatically liable for. So are there certain circumstances where a police officer engages in misconduct that is not reached by these, these disciplinary procedures? I mean, there's a multitude of circumstances, but I mean, specifically. So what, what generally, generally, what are the circumstances under which the misconduct by an off duty police officer would lead to disciplinary action? Would or would not? Would. Would. So I think this is a situation. This officer engaged in things that are clearly stated that they can't do. He disposed of Mr. Cooper's hat during an altercation. He didn't call his patrol. But does it matter for these purposes that at one point he said, I'm an officer. That is, would he have been equivalently disciplined necessarily if at home he'd gotten into a fight with somebody where no one thought that he was an officer? He never identified. I understand. Yeah. But I'm just saying is, is the fact of discipline suggestive that somewhere people thought that he was an officer and therefore was bringing harm to the New York police department? I guess we're not litigating the disciplinary charges, obviously, but no, in this case, the things for which he was disciplined have nothing to do with, he didn't identify himself as an officer and he was out of uniform. He was disciplined for prior conduct. There may be a question of fact on that because there is something in the evidence. I mean, the guy who was injured says he did. Okay. I'm sorry. I want to make sure that that's clear. There's been no allegation anywhere in this case that Mr., that the officer ever identified himself to Mr. Cooper as an officer at any point during their altercation. He was just a man who got out of a car with another man. And then the two men started fighting and then he sort of stands in the middle. There's a video. It makes it pretty clear. But also there's no point at which, and no allegation that officer Jacobs was acting as a police officer or that Mr. Cooper had any way to believe or any reason to think he was a police officer up until other police officers showed up and he identified himself to the police. And at that point he had to do that. And at that point he identified. But this is the point. He had to, because that is one of the other conditions of the patrol guide. So an officer who was involved in any off-duty account. Counsel. Yeah. I don't care whether he had to. I just care whether he did and what the consequences of that are. Does it matter that at some point when the others came, he identified himself as a police officer in terms of a jury being able to say that he was acting under color of law? No. If it were the rule that an officer who is off duty, as soon as he identifies himself to other responding officers who are on duty as an officer automatically became on duty or became acting under color of law, then there would never be this entire doctrine would go out the window because an officer is required. The two things are very different. To say that he was on duty is one thing. To say that it is sufficient for a 1983 action to say that he was acting under color of law. Right. I think that is a different question. But to be clear, the theory that you're positing is that as soon as an officer identifies themselves as an officer, they become under color of law, but an officer is required to identify themselves to other officers. So there would be no concept of color of law. It would just mean as soon as an officer shows up off duty, the city would be liable for everything they do as a witness or in any other way. That is not consistent with the Supreme Court's case law, with this court's case law. The requirement for color of law is a lot more complex. It requires a look, as my counsel said, at a totality of facts. This officer, he didn't ask for this man's arrest. He provided evidence akin to what is provided by a witness, he didn't take evidence, he didn't put the guy in the car, he didn't go to the station, he didn't meet with him, he didn't interview him. He didn't swear out a statement as an officer. He swore out a complaining victim statement. He was signed in as a complaining victim in the paperwork. So the idea that- We've kept you well past your time, as we like to say on the Second Circuit. And we'll hear from counsel for Lieutenant Jacobs. Terrible. Terrible. Thank you, your honors. May it please the court, my name is James Michelle, a counsel for the co-defendant, Apolli Thomas Jacobs, in this matter. And obviously, I concur with and join in many of my counsel's arguments in regards to the issues of probable cause and conspiracy. I'll spare you my regurgitation of all those points. I really try to hit some new things while addressing any questions that the court may have, of course. I would like to address, with the court's permission, a plaintiff's attempt to now resurrect and add this 1983 claim of false arrest, a direct claim of false arrest against Lieutenant Jacobs, right? Because we can all concede that that claim does not presently exist. Plaintiff's attempts to add that claim- And the question is, was the district court correct in saying, allowing this amendment would be futile? The district court, Judge Garifas, and then by extension, Judge Kovner, and her decision was absolutely correct, your honor. Judge Garifas' decision in 2019, denying plaintiff's attempt to add that direct claim of false arrest against Jacobs was soundly reasoned. It was an exhaustive approach of both the facts and the law that apply in that area, and it certainly was not an abuse of discretion on his part, and I do not think that it should be disturbed by this court. If you go to Judge Garifas' decision, which specifically on this point is joint appendix pages 167 and 168, he lists a plethora of reasons as to why the claim should not be added. Focusing in on, and I know we're going to get to the color of law argument, but focusing in on the fact that there is no evidence then, and no evidence now, to support that Jacobs was a participant in the arrest of plaintiff. And all of those factors that Judge Garifas lists in his decision denying leave to amend were all borne out in discovery. For example, it wasn't plaintiff... I'm a little puzzled about that, because wasn't it what Jacobs said to the arresting officers that made them arrest? I mean, wasn't Jacobs, at least some of the things that Jacobs said, maybe the arresting officers could have arrested even without it, but wasn't, weren't some of the things that Jacobs said one of the reasons why the probable cause argument on the part of the others is a non, is obvious? They had probable cause because of what Jacobs said. Well, ultimately, your honor, yes, some of what he said during the investigation by the duty captain formed the basis of the arrest. And if that is so, and if he was Well, if he was a participant as a victim, filling out a statement that does not make him a participant, for purposes of... What would be helpful for me, and I want you to continue answering Judge Calabrese's question, is if you would elucidate for us under 1983, what we have said, if anything, about what it means to participate in an arrest. That is, what it means for a law enforcement officer, either at the state, local or federal level, to participate in an arrest, such that subject to the color of law and other requirements, that officer might be liable. Certainly, your honor. And I think we start with some very seminal and important cases in this very circuit. The jocks case, which was cited throughout the briefs. Another case, Rivera versus Laporte, which was decided by this court in 1990. Those are clear examples of the officer participating in the arrest. The officer identified himself during the physical altercation, as a police officer pulled his firearm, held them there at gunpoint, awaiting the arrival of on-duty police. But counsel, those cases say that that is enough. What I want to know is whether this, which is less than in those cases, is also enough. It is not. And what cases do you have contra to that? It is respectfully not enough. I've searched the cases to try to find cases in which it supports that this would be participation in this case. And there are none out there, particularly because, I'm sorry, your honor. No, you're telling me there are no cases directly contrary to you, but are there any cases directly supporting you? There are cases that say that where a police officer is not acting in the scope of his employment and is acting as a private citizen, there are a plethora of cases that state he could be held liable under a conspiracy theory with the on-duty actors, but that does not make him a liable. Well, let me ask you the question in this way, maybe through a quasi-hypothetical. If he had, that is, if your client had identified himself as an officer and was present while, directly present while the other officers were engaged in the arrest, and is there anything else that he would have needed to do for you to acknowledge or concede that he had participated in the arrest? We're separating the physical dispute from the arrest, which is- Does he assault? Alleged assault? We see them as intertwined because it's clear that during the physical assault, there is no color of law. I think plaintiff concedes that point. I'm just focused on the arrest, the point of arrest. So after the fact, all of those factors were, plaintiff says, the officers ordered me to get in the car. Jacobs wasn't even there yet. The officers ordered me back to the precinct, nothing to do with Jacobs. The officers ordered me to stay in the precinct, nothing to do with Jacobs. The duty captain interviewed him in regards to the incident, nothing to do with Jacobs. By the way, Jacobs was ordered to go to the precinct. Jacobs didn't call 911. He was leaving the situation. He was ordered to go to the precinct just as much as the plaintiff was. At what point is it alleged that he was actually, Mr. Cooper, was arrested, was under arrest? I believe he says at the point in time that they ordered him in the car and ordered him back to the precinct. Their theory is he is under arrest at that point in time. And then subsequently that was affirmed by the duty captain who after at least a five or six hour investigation, he then affirmed that and he made clear his position. That was his decision. Yes, Your Honor. Let's assume that you are right and what is in the complaint and what was shown so far would not be enough. But the question before us is whether an amendment to charge Jacobs in this would be futile. And that is a different kind of standard. The question is, are there facts that have not been alleged, but which are plausible to be alleged in this situation so that an amendment to allow them to try to make those would not be futile? If an amendment is made, it may be that the case can still be dismissed or not, depending on what they say. But, you know, you've been saying with Judge Lohier, this might be enough. This is not enough. My question is, are some things which might be enough, the kinds of things that they could show on amendment? Even if, Your Honor, he was allowed to amend at that point in time, we have now conducted voluminous, exhausted discovery and have elicited pretty much every fact you can imagine. And based on all of those facts, plaintiff cannot get over summary judgment on the issue of. This is why your friend on the other side was talking about both the motion to That's the futility of summary judgment. Yes. Summary judgment. Exactly. So it would be futile in our estimation. And there was also a proposed amended complaint in front of Judge Garifus. That's what he was looking at when he made the futility analysis. Right. We have Judge Garifus's initial decision on the futility analysis. We now then had a second amended complaint, which was filed, which Judge Kovner looked at. Judge Kovner. Okay. Basis to disturb Judge Garifus's 2019 finding. And then we have the third argument, which is what Your Honor is saying is that it would be even futile at this point in time. Forget about the complaints. We have had voluminous discovery, none of which established tribal issues of fact that Jacobs A participated in this arrest or that he did so as a member of the New York City Police Department. This was a private dispute. It was a personal matter between him. He was a victim listed on all of the paperwork, including all of the district attorney's paperwork, their ECAB paperwork. And there's nothing to indicate that he was acting as a police officer at any point either before, during, or after the incident in question. So thank you. No more questions. Again, I would ask that the court affirm the lower courts granting a summary judgment in all respects. Thank you. Thank you. It would be very helpful, I think for me, for you to identify specifically given what you just heard, what either in summary judgment or in the proposed amended complaint adequately shows, sufficiently shows the lieutenant's participation. Yes, your honor. I think we should look at what the lieutenant actually said or more accurately what the paperwork says. We don't know what their private conversations were. And I do think this court should consider whether or not Jacobs actually told the truth about what happened. I mean, the idea that we're presuming that he never just spilled the beans as a matter of law, I find that a bit troubling. Yeah. Tell us what he said. Yes. He said, I was punched harder than I've ever been punched before. I saw stars. I went down on one knee, injuring my knee, and I got hurt on my head. And what you can also see in the video is him chasing Jake, chasing Cooper, trying to grab the hat, falling, hitting right here where the bruise is on his head. He goes right down onto the concrete and obviously also hurting his knee because there's no view of the video where my client flicks the glasses that ever involves the knee. And this is important for two reasons. The first is if you look at the shot. Is this getting a participation? Yes. The participation is, that's what he told the officers happened to him, which caused the arrest. And it extinguished the possibility of the self-defense argument. But that's what he told the officers. But what did he tell the officers that would make him suggest that he was doing this under color of law? Because, and going back to this sort of, isn't everyone on duty? Normally what happens in this circumstance is something happened in the past, a fight, a car accident. They arrive and somebody says, I'm a police officer. And they're worried, okay, that means everybody's acting under color of law. But in almost every single case, there's no additional tortious conduct. What happens is previously something had happened. Maybe it was off duty. Maybe it was untoward. Maybe it was perfectly fine. It's just a car accident, not their fault. That part doesn't become color of law. The problem is, is when the cops come, you've got your badge. You've got this authority in a position. I'm trying to understand you and I'm having great trouble. I must say, are you saying that he said, I'm an officer and under color of law, he lied and that that was the reason they arrested him? Is that what you're trying to say to me? That's exactly what I'm trying to say. Okay. Yes. That's exactly what I'm trying to say. Your honor is that he identified himself as an officer and then he told a lie to instigate an arrest. That's what the evidence shows. And it's a very different explanation of what happened. So you use the word instigate. I'm interested in the word participate. So, so if a, if a witness or a victim, uh, tells a police officer X, Y, or Z exactly, for example, what a Lieutenant Jacob says that may have instigated the, uh, arrest, but obviously the witness has not participated in the arrest. What is it in the proposed amended complaint or in the summary judgment record that shows that he participated in the arrest in a way that we have recognized as participation in an arrest. And to be clear, because you, because by the way, your, your, your friend on the other side has said he wasn't even around at the time that you claim that, uh, Mr. Cooper was arrested. So I'm, I'm, I'm trying to, I'm trying to understand and I'm sympathetic. It happened right at that time. Immediately after speaking to And by the way, the actual formal process of arrest ended up happening three and a half hours later. But at that moment, the officer speak to Jacobs, they receive the information and they're not hearing about the flicking of the glasses. They're hearing that my client knocked a cop unconscious. And he does that right after saying, I'm on the job, I'm an officer, and this is what happened. And the case- When, at the time that, uh, Mr. Cooper is arrested, where is Mr. Jacobs according to either the evidence or, uh, the proposed amended complaint? Cooper's sitting in the police car. Well, he gets out and then is told to go back into the police car and is told he can't leave. And Jacobs is right there outside. And then they all go to the precinct. He's right there. And then when he's at the precinct, Jacobs is held, you know, he's not an ordinary- Why is that? Why is that participation? Because- Oh, under, well, there's no difference under the law of false arrest. If you give a false statement to your fellow officers that leads them to then make an arrest, that's participation. Isn't that fabrication? Well, it may also very well be fabrication. So this is why I'm confused. Because if, if there's a, you know, a false arrest based on someone's false statement, that's fabrication. But whether or not they've actually participated in the arrest is a separate analytical issue for me. But I might, I might be wrong. I'm saying, and there's, there's case law in the brief that explains this. To be liable for false arrest, you don't have to put the cuffs on. It is enough to say, go arrest that person as a superior officer. And it's enough to give false statements to another officer, which leads to the arrest. What is the best case for that? That's, that's actually, well, Jocks is very, very close on this particular issue. But everyone, everyone is citing Jocks in their favor. I mean, that's one, I mean, they said it was plausible self-defense. The, this guy hit the officer in the face with a payphone. Let me, are you saying that somebody who has identified himself as an officer then says something falsely that leads other people to arrest this person, may be liable for false, the false statement, but is also participating in the false arrest? Yes. Okay. And here's- That's your argument. And I, and let me direct you to the case law. Hernandez v. United States, that's an ICE officer wrongfully issued a detainer, had no participation in the arrest. In fact, was entirely divorced from arrest, but was held liable because he knew exactly what was going to happen by issuing that detainer. Another one is Bertuglia. But he issues a detainer. Right. So that's, that's directly participating in the arrest. But, right. That's the, that's the issuing a summons in effect. Right. Well, he did it on paper instead of verbally. Another case is Bertuglia, which we cite right afterwards. And the quote, which is actually quote, quoting Lopez v. City of New York, which is another Southern district cases, a defendant who is not an arresting officer may be liable for false arrest. If the defendant instigated an arrest by a police officer, knowing there was no probable cause to believe plaintiff committed a crime. But Jacobs knew that Cooper had committed criminal mischief and misdemeanor assault. And whatever else. Right. And that's why I'm hung up on jocks, because a police officer may not ignore an affirmative defense. And here you have two much larger men. One said, I'm going to rob you. The other Jacob said, I'm going to shoot you and hip checked him so he could feel his gun. And Cooper distracted him and ran. And at least a jury can look at those facts and say, you know, that's pretty obviously self-defense behavior that vitiates probable cause. At least it's a matter of law. I don't think my client loses. That's ultimately where you land. Yeah. OK. Thank you. Thank you very much. We'll reserve decision.